JS-6

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association, | Case No. 2:24-cv-00880-JLS-E |
| Plaintiff, | |
| v. | **CONSENT DECREE** |
| OWENS CORNING, | |
| Defendant. | |

## CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Defendant OWENS CORNING ("Defendant") owns and operates a facility a 1501 North Tamarind Avenue, in Compton, California, under Waste Discharger Identification number 4 19I003711 ("Facility");

**WHEREAS,** the Facility's industrial activities consist of manufacturing roofing products. The Facility is categorized under Standard Industrial Classification ("SIC") Code 2952, covering ("Asphalt Felts and Coatings") and SIC Code 2951 ("Asphalt Paving Mixtures and Blocks");

**WHEREAS,** storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit")[1], and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

**WHEREAS**, on June 16, 2022, the California Regional Water Quality Control Board, Los Angeles Region ("Regional Board") issued Time Schedule Order ("TSO") No. R4-2022-0015 pursuant to California Water Code sections 13300 and 13385(j)(3), requiring Defendant to comply with certain requirements stated in the TSO to ensure compliance with effluent limitations for total zinc and total copper contained in the General Permit.  The TSO requirements include the installation of filtration and treatment systems at the Facility to enable Defendant to achieve compliance with zinc and copper effluent limitations by December 31, 2024.  The TSO further set interim effluent limitations for total zinc and total copper to be in effect at the Facility from June 16, 2022 through December 31, 2024.

**WHEREAS**, on November 1, 2023, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director of the Regional Board, and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ

incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility;

**WHEREAS**, on February 1, LA Waterkeeper filed a complaint against Defendant in the Central District of California ("Court"), Civil Case No. 2:24-cv-00880-AS ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including Compton Creek, the Los Angeles River, and ultimately to the Los Angeles River Estuary, Queensway Bay, San Pedro Bay, and the Pacific Ocean (collectively, "Receiving Waters");

**WHEREAS**, Plaintiff and Defendant (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.     Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.      The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.      LA Waterkeeper has standing to bring this action.

5.      The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term (as defined below) of this Consent Decree.

# I.   OBJECTIVES

6.      It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, compliance with all applicable sections of the CWA, and compliance with the Regional Board TSO.

7.      In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, all applicable sections of the CWA at the Facility, and remain in compliance with the TSO.

# II.   AGENCY REVIEW AND DEFINITIONS

### A.   AGENCY REVIEW OF CONSENT DECREE

8.      <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent

Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9. <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10. <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B.    DEFINITIONS**

11. Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

    a.    "BAT" means the Best Available Technology Economically Achievable.

    b.    "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

    c.    "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

    d.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

    e.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs

1    until the close of business on the next day that is not a Saturday,

2    Sunday, or Federal or State Holiday.

3    f.    "Design Storm" means the volume and flow rate of runoff

4    produced from a design storm as defined by General Permit

5    Section X.H.6."

6    g.    "Discharge Point" means each discharge location designated in

7    the then-current SWPPP for the Facility.

8    h.    "Effective Date" means the effective date of this Consent Decree,

9    which shall be the date of full execution by the Parties.

10    i.    "Entry Date" means the day this Consent Decree is approved and

11    entered by the Court.

12    j.    "Forecasted Rain Event" means a forecasted rain event as

13    determined by the National Oceanic and Atmospheric

14    Administration (http://forecast.weather.gov/) for "90222,

15    Compton, CA, USA".[2]

16    k.    "In writing" means in written electronic or hard copy form.

17    l.    "MIP" means a Monitoring Implementation Plan.

18    m.    "PPT" means Pollution Prevention Team.

19    n.    "Qualified Industrial Storm Water Practitioner" or "QISP" shall

20    have the definition set forth in Section IX.A.1 of the General

21    Permit.

22    o.    "Qualifying Storm Event" or "QSE" shall have the definition set

23    forth in Section XI.B.1 of the General Permit.

24    p.    "Reporting Year" means the period from July 1 of a given

25    calendar year to June 30 of the following calendar year.

26

27

28

---

[2] Available at: https://forecast.weather.gov/MapClick.php?lat=33.9111&lon=-118.2365.

q.     "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

r.     "SWPPP" means a Storm Water Pollution Prevention Plan.

s.     "Term" means the period between the Effective Date and the "Termination Date."

t.     "Termination Date" means the latest of:

    i.     June 30 following four (4) years from the Effective Date;

    ii.    June 30 following two (2) years after the proposed advanced treatment system for drainage area S-3 is fully installed, operational, and optimized;

    iii.   seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to the later of dates in (i) and (ii) above; or

    iv.    seven (7) days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree;

    v.     Except if the Facility discontinues industrial use of zinc oxide and copper oxide powder, in which case the Termination Date shall be the date on which the parties, after meeting and conferring pursuant to the Dispute Resolution procedures in Section IV below, agree to a stipulation, filed herein, notifying the Court and the Department of Justice that the Consent Decree has been terminated and the reasons therefore.  As part of this process, Plaintiff shall be entitled to an additional Facility inspection to verify the discontinued use of zinc oxide and copper oxide powder as well as General Permit compliance

and the absence of additional zinc or copper pollutant sources warranting continued attention under this Consent Decree.

u.    "Wet Season" means the period beginning October 1st of any given calendar year and ending June 30th of the following calendar year.

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.    Non-Storm Water Discharge Prohibition.  Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13.    Current and Additional Best Management Practices. At all times, Defendant shall implement BMPs identified in its SWPPP and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those (1) necessary to comply with BAT/BCT-level pollutant reductions; and (2) the General Permit's Receiving Water Limitations, which require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards" contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

14.    Structural and Non-Structural BMPs for the Facility. Within forty-five (45) days of the Effective Date, unless otherwise stated, Defendant shall develop and implement the following BMPs at the Facility:

a.    **Improved Raw Materials Storage for Zinc and Copper Oxides**.  Install Shipping Containers for the storage, whether permanent or temporary, of all raw materials at the Facility containing zinc oxide or copper oxide (with all deliveries of such raw materials to the Facility stored indoors or placed directly in

the Shipping Containers by the end of the day on the date of the raw material delivery);

b. **Improved Inlet Protections (Drainage Areas S-1, S-2 and S-4).** At all existing drainage inlets in Drainage Areas S-1, S-2 and S-4, install new filter socks and drain inlet filters and implement weekly inspections of these drainage inlets as required by the General Permit. Each such drainage inlet shall include filtration through Abtech Smart Sponge Media HM or an equivalent filter medium. Each of these visual inspections shall be contemporaneously logged with the Facility SWPPP, indicating the inspector's name, and the date and time of the inspection of each drainage inlet pursuant to a pre-printed checklist identifying each inlet to be inspected. During the Wet Season, as necessary, Defendants shall replace the wattles/filters/socks in when degraded or ineffective, including without limitation when there are rips, tears or other visual damage, and/or sampling data demonstrating the wattles/filters/socks are not sufficiently reducing pollutant concentrations.

c. **Cover or remove final product storage (Drainage Areas S-2 and S-4).** Within sixty (60) days of the Effective Date, implement a program to cover (e.g., using tarp or storm-resistant shelter) all outdoor final product storage in Drainage Areas S-2 and S-4 prior to Forecasted Rain Events or move all outdoor final product storage out of Drainage Areas S-2 and S-4. This change will be incorporated in the SWPPP.

d. **Advanced Treatment System (Drainage Area S-3).** Within twenty-four (24) months of the Effective Date, if still using zinc and copper-containing powder in its industrial processes,

Defendant shall design and implement a detention storage and advanced treatment system ("Treatment System").  The Treatment System shall be designed to meet NELs and NALs for copper and zinc at discharge point S-3, using media filtration, and sized to meet the design standards in section X.H.6 of the General Permit. All roof runoff from the Cooling Section Roof as delineated in Exhibit A attached hereto  will be routed to the Treatment System. Defendants shall provide written quarterly status reports to Plaintiff ("Status Reports") on the feasibility, engineering, designing, permitting and building of the Treatment System beginning one hundred twenty (120) days from the Effective Date and continuing until the project is fully built.  The first Status Report, due one hundred twenty (120) days from the Effective Date, shall include the proposed comprehensive design for the Treatment System, including but not limited to, the hydrology and hydraulics analysis for the Facility, projected volume storage, and the treatment design flowrates.

e.    **Waste Removal.**  Cover or remove all shingle waste bins in Drainage Areas S-1, S-2 and S-4 to locations under either new or existing roof cover, or into Area S-3.

f.    **Improved Sweeping Program.**  On all paved areas, implement a sweeping program on a monthly frequency using a sweeper certified by the South Coast Air Quality Management District with the capacity to collect and retain PM-10 (10 μm) particles. On a weekly frequency during the Wet Season, and within twenty-four (24) hours prior to a Forecasted Rain Event, implement a sweeping program using the existing facility-owned sweeper. Also employ hand sweeping and/or vacuuming on the same schedule in

all areas a mechanical sweeper cannot access that potentially contribute to contamination of stormwater discharge, subject to safety considerations. These sweeping events shall be contemporaneously logged with the Facility SWPPP, indicating the personnel involved, and the date(s) for each sweeping event.

g.   **Pre-Rain Protocols.**  Institute a formal pre-rain protocol throughout the Wet Season to be implemented within twenty-four (24) hours prior to a Forecasted Rain Event, and requiring the inspection of all drainage inlets, removal of any exposed waste material, and relocation of uncontained or uncovered shingle waste bins under cover sufficient to prevent exposure to rainfall, including without limitation those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

Within seven (7) days of each of the above BMPs being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth above.

**B.   SAMPLING AT THE FACILITY**

15.   Defendant shall develop a monitoring program consistent with the General Permit.  During the Term, Defendant shall collect samples of storm water discharge from each Discharge Point for a minimum of four (4) Qualifying Storm Events each Reporting Year as required by the General Permit, and shall use best efforts to collect such samples during the first two (2) Qualifying Storm Events in each half of the Reporting Year. Such sampling shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5. If Defendant would have been required to collect samples during a rain event pursuant to the qualified storm event definition of this Consent Decree had such rain event produced a sampleable discharge, but Defendant did not collect samples because such rain

1   event did not produce a sampleable discharge, then Defendant shall use best efforts to

2   document the inability to sample by taking representative photographs during the rain

3   event of each Discharge Point from which no discharge occurred. Defendant shall

4   submit such photographs to LA Waterkeeper by email, along with nearby publicly

5   available rain gauge/sensor data for the date of such rain event, within five (5) days of

6   a written request for such records by LA Waterkeeper.

7           16.     Sampling Parameters. All samples collected pursuant to this Consent

8   Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should

9   Defendant intend to modify sampling for any of the parameters listed in Table 1 or

10  additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General

11  Permit for any reason, including without limitation as a result of changed operations,

12  a revised pollutant source assessment, or a new mandate from a regulatory agency,

13  such modification shall be incorporated into this Consent Decree as if listed in Table

14  1 for all purposes, including any Action Plan requirements (as defined below).

15  Defendant shall promptly notify LA Waterkeeper of its intent to modify sampling for

16  any parameters and the Parties shall meet and confer regarding the applicable Table 1

17  limit for such purposes within ten (10) days of such notification, unless such

18  modification will be addressed pursuant to the review and comment provisions

19  applicable for SWPPP revisions in paragraph 27.

20          17.     Laboratory and Holding Time. Defendant shall deliver all samples

21  collected pursuant to this Consent Decree to a California-certified environmental

22  laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136.

23          18.     Detection Limit. Defendant shall request that the laboratory use

24  analytical methods adequate to detect the individual contaminants at or below the

25  values specified in the General Permit and Table 1 below.

26          19.     Reporting. Defendant shall provide complete laboratory results of all

27  samples collected at the Facility to SMARTS in accordance with the General Permit,

28

and shall provide copies to LA Waterkeeper within ten (10) days of receiving the
laboratory report with the results.

### C.   REDUCTION OF POLLUTANTS IN DISCHARGES

20.    Table 1 Numeric Limits. Defendant shall develop and implement BMPs
for storm water discharges from the Facility that reduce pollutant concentrations to
levels below those in Table 1.

**TABLE 1**

| Parameter | Numeric Limit | Source of Limit |
|:---:|:---:|:---:|
| Copper | 0.06749 | NEL |
| Zinc | 0.159 | NEL |

21.    Table 1 Exceedances.  An "Exceedance" of Table 1 is defined as
follows: where the concentration of any pollutant in any two (2) storm water samples
from a given sampling location during a Reporting Year exceeds any numeric limit
contained in Table 1, except during storms that exceed structural BMP sizing criteria
of section X.H.6 of the General Permit. An exceedance shall constitute a violation of
this Consent Decree, except it shall not be considered a violation for S-3 until after
complete installation of the treatment system pursuant to Paragraph 14.d above.

22.    Action Plan for Table 1 Exceedances. As of the Effective Date (and, for
S-3 after complete installation of the treatment system pursuant to Paragraph 14.d
above), and for the remainder of the Term, if Defendant has an unauthorized non-
storm water discharge in violation of Paragraph III.A.12, above, or storm water
samples demonstrate an Exceedance as defined above, Defendant shall prepare and
submit to LA Waterkeeper a plan for reducing and/or eliminating the relevant
discharge of pollutants for the Facility and/or achieving compliance with the non-
storm water discharge prohibition ("Action Plan"). However, an Action Plan shall not
be required when the BMPs for the applicable unauthorized non-storm water
discharge or Exceedance for the same pollutant in the same drainage area were

addressed in a previous Action Plan in the same Reporting Year and such BMPs were not yet implemented as of the date of the applicable unauthorized non-storm water discharge or QSE sampling that led to the Exceedance.[3] The complete Action Plan shall be submitted to LA Waterkeeper within thirty (30) days of the unauthorized non-storm water discharge or the receipt of the laboratory report demonstrating the Exceedance, as applicable.

      a.   <u>Action Plan Requirements</u>. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s) and/or the applicable unauthorized non-storm water discharge; (2) an assessment of the source of each contaminant exceedance and/or applicable unauthorized non-storm water discharge; (3) the identification of any additional BMPs or other steps that are proposed to be implemented to achieve compliance with the numeric limit(s) and/or unauthorized non-storm water discharge prohibition, as well as the design plans and calculations of any additional BMPs; and (4) time schedules for implementation of any proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as practicable, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within seven (7) days of any of the BMPs set forth in the Action Plan being implemented, Defendant shall confirm to LA Waterkeeper in

---

[3] For clarity, an Action Plan based on an Exceedance shall be required if: (i) the applicable Exceedance is demonstrated for a pollutant and/or in a drainage area not addressed in a previous Action Plan in the same Reporting Year; and/or (2) when the applicable Exceedance is demonstrated for the same pollutant in the same drainage area as in a previous Action Plan in the same Reporting Year and the BMPs in the previous Action Plan were fully implemented before the applicable QSE that led to the Exceedance was sampled.

writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

b.    Action Plan Proposed BMPs. The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

    i.    Fleet Tires Upgrade.  Upgrade all truck and forklift tires with zinc-free tires or other durable alternatives that minimize the release of dust.

    ii.    Improved Sweeping. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

    iii.    Treatment System Improvements (Drainage Area S-3). Installing additional components or systems, or otherwise improving, the Treatment System, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

    iv.    Evaluation of Existing BMPs.  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

    v.    New treatment (Drainage Area S-1). Similar to the Treatment System described above for Drainage Area S-3. Alternatively, this could involve routing stormwater from S-1 to the S-3 Treatment System, and upgrading that Treatment System to maintain sizing consistent with IGP section X.H.6 for the new larger combined drainage area.

vi. **Improved Downspout Protections (All Facility Roofing).**
Install Zinc-B-Gone Pro roof downspout filters at all roof downspouts where such filter has not already been installed and where BMPs are not already present, and replace media at existing Zinc-B-Gone filters with standard, vendor-provided metal cation exchanging media.

c. <u>Action Plan Review</u>. LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d. Defendant shall revise the then-current SWPPP to reflect the changes implemented pursuant to the Action Plan, as set forth in Paragraph 27, below.

e. <u>Action Plan Payments</u>. Defendant shall pay Four Thousand Dollars ($4,000.00) each time an Action Plan is submitted to LA Waterkeeper. Payments are due at the same time that the applicable Action Plan is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd

Street Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

**D.    VISUAL OBSERVATIONS**

23.    <u>Storm Water Discharge Observations</u>. During the Term, appropriately trained staff of Defendant shall conduct visual observations during the Facility's operating hours during a minimum of four (4) QSEs each Reporting Year as required by the General Permit. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit, and any successor thereof.

24.    <u>Monthly Visual Observations</u>. During the Term, appropriately trained staff of Defendant shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit, and any successor thereof. Such monitoring shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

25.    <u>Visual Observations Records</u>. Defendant shall maintain observation records, including representative photographs, to document compliance with Paragraphs 23 and 24. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to

describe the completed activity and all observations thereof, including but not limited
to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair,
replacement, or operation and maintenance is needed for any BMPs; (iii) other
conditions that have the potential to lead to pollutant loading in storm water
discharges; and (iv) representative photographs of all of the foregoing where feasible.
Defendant shall provide LA Waterkeeper with a copy of those records within seven
(7) days of receipt of a written request from LA Waterkeeper for those records.

26.    <u>Employee Training Program</u>. Within thirty (30) days of the Effective
Date, Defendant shall develop and implement an employee training program that
meets the following requirements and ensures (1) that there is a sufficient number of
employees at the Facility designated to achieve compliance with the General Permit
and this Consent Decree ("Designated Employees"), and (2) that these Designated
Employees are properly trained to perform the activities required by the General
Permit and this Consent Decree ("Training Program"):

a.    <u>Materials</u>. Training materials should include, at minimum, a
detailed Training Manual or Standard Operating Procedure,
including drawings and diagrams where appropriate, for reference
and use by Defendant's personnel to ensure effective
implementation of all BMPs at the Facility;

b.    <u>Language</u>. The training and training materials shall be available
and offered in the language(s) in which relevant employees are
fluent. If necessary, Defendant shall provide a translator or
translators at all trainings where such translation is likely to
improve staff comprehension of the Training Program and
improve compliance with this Consent Decree and the General
Permit;

c.    <u>Training Frequency</u>. Training shall be provided by a QISP
familiar with the requirements of this Consent Decree and the

General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

    d.    <u>Sampling Training</u>. Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

    e.    <u>Visual Observation Training</u>. Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

    f.    <u>Non-Storm Water Discharge Training</u>. Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

    g.    <u>Employees</u>. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date; and

    h.    <u>Records</u>. Defendant shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within seven (7) days of receipt of a written request.

27.    <u>SWPPP Revisions</u>.

    a.    <u>Initial SWPPP Revisions</u>. Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree

and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment.  The complete, updated SWPPP shall contain, at a minimum, the following elements:

i.    A revised pollutant source assessment, including all elements required by section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads and that are associated with an industrial activity or material that is exposed to rainwater/stormwater;

ii.   A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by section X.G of the General Permit;

iii.  Descriptions of all BMPs in accordance with section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

iv.   A set of site maps that comply with section X.E of the General Permit and provisions of this Consent Decree;

v.    A MIP as required by sections XI and X.I of the General Permit;

vi.   A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual

1                                    inspection of each specific area, monitoring each specific

2                                    BMP, sampling, etc.; and

3                   vii.    A Training Program as described above in Paragraph 26.

4           b.    <u>Additional SWPPP Revisions</u>.

5                   i.     Within thirty (30) days after acceptance of any Action Plan

6                                      by LA Waterkeeper (or resolution pursuant to Dispute

7                                      Resolution), Defendant shall revise the then-current SWPPP

8                                      to reflect the changes required by the Action Plan and

9                                      submit the complete, updated SWPPP to LA Waterkeeper

10                                    for LA Waterkeeper's review and comment.

11                  ii.    Within thirty (30) days after any changes in industrial

12                                      activities, sources of industrial pollutants, monitoring

13                                    parameters, changes to Discharge Points, or material (i.e.,

14                                    non-administrative) changes to sections of the SWPPP

15                                    identified in the SWPPP as requiring a SWPPP revision

16                                    (including but not limited to, changes in or additions of

17                                    industrial activities that impact storm water discharge),

18                                    Defendant shall revise the then-current SWPPP to reflect

19                                    such changes and submit the complete, updated SWPPP to

20                                    LA Waterkeeper for LA Waterkeeper's review and

21                                    comment.

22           c.    <u>Review of SWPPP</u>.  For any SWPPP updates during the Term of

23               this Consent Decree pursuant to Paragraphs 28.a. and 28.b., LA

24               Waterkeeper shall have thirty (30) days upon receipt of

25               Defendant's complete SWPPP to provide Defendant with

26               comments. Within thirty (30) days of receiving LA Waterkeeper's

27               comments and proposed changes to the SWPPP, Defendant shall

28               consider each of the comments and proposed changes and either

accept them or justify in writing why a change is not incorporated.
The Parties agree to work in good faith to resolve any disputes
with respect to the SWPPP, and any remaining disputes will be
resolved through timely initiation of the dispute resolution
procedures in Section IV below. Following its incorporation of
proposed modification or additions (if any) into each revised
SWPPP, Defendant shall upload the revised SWPPP to SMARTS.

### E.    COMPLIANCE MONITORING AND REPORTING

28.    LA Waterkeeper may conduct one annual site inspection ("Site
Inspection") during each Reporting Year during the Term for the purpose of ensuring
compliance with this Consent Decree and the General Permit. In the event of a
dispute regarding Defendant's compliance with this Consent Decree, and provided a
Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to
meet and confer regarding an additional Site Inspection at Plaintiff's request. Plaintiff
shall not unreasonably request, and Defendant shall not unreasonably deny, one
additional Site Inspection. Any Site Inspection shall occur during normal business
hours, and LA Waterkeeper will provide Defendant with at least forty-eight (48)
hours' notice prior to a Site Inspection, and specify the time and date of the proposed
inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall
be entitled to adjust timing or reschedule during normal business hours in the event
the forecast changes and anticipated precipitation appears unlikely, and thus frustrates
the purpose of visiting the Facility in wet weather. Notice will be provided by
electronic mail to the individual(s) designated below at Paragraph 56. During the Wet
Weather inspection, Plaintiff may request that Defendant collect a sample of
industrial storm water discharge from the Facility's designated industrial discharge
point(s) referenced in its SWPPP, to the extent that such discharges are occurring,
unless four (4) samples in the reporting year have already been collected, or the
timing of the inspection fails to meet the QSE definition, or samples were already

1  collected earlier by Defendant for that same QSE. Defendant shall collect the sample

2  and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s)

3  may observe the split sample(s) being collected by Defendant's representative LA

4  Waterkeeper shall be permitted to take photographs or video recording relevant to

5  storm water discharges during any Site Inspection.

6      29.   Document Provision. During the Term, Defendant shall notify and

7  submit documents to LA Waterkeeper as follows:

8          a.    By the 1st day of each month, Defendant shall provide LA

9                Waterkeeper with copies of all documents materially relevant to

10                storm water quality at that facility, including compliance

11                documents, monitoring and/or sampling data, or written

12                communications and/or correspondences that have been submitted

13                to or received from the Regional Board, the State Board, and/or

14                any state or local agency, county or municipality in the previous

15                month, unless the documents are publicly accessible through

16                SMARTS.

17      30.   Compliance Monitoring. Defendant shall partially defray costs

18  associated with Plaintiff's monitoring of Defendant's compliance with this Consent

19  Decree during the Term by paying Five Thousand Dollars ($5,000.00) per year of the

20  Consent Decree, beginning on the Entry Date.  The first such payment shall be made

21  within thirty (30) days of the Entry Date, and each subsequent payment shall be made

22  upon the applicable anniversary of the Effective Date. In the event that, pursuant to

23  Paragraph 29, there is an additional Site Inspection in a given year to resolve a

24  dispute pursuant to the Consent Decree, Defendant shall reimburse LA Waterkeeper

25  an additional Two Thousand Dollars ($2,000.00) during such year. Payment shall be

26  made within thirty (30) days after any additional Site Inspection, as applicable. The

27  payment shall be made via check, made payable to: "Los Angeles Waterkeeper" via

28  certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak

Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

**F.    ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST**

31.    <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution occurring in the watersheds of Compton Creek and the Los Angeles River, and the Pacific Ocean near the mouth of the Los Angeles River, Defendant shall make a payment totaling Thirty-Five Thousand Dollars ($35,000.00) to the Think Watts Foundation made within thirty (30) days of the Entry Date, payable to the Think Watts Foundation and sent via overnight mail to  Think Watts Foundation, 1225 E 100th Street, Los Angeles, CA 90002. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

32.    <u>LA Waterkeeper's Fees and Costs</u>. Defendant shall pay a total of Seventy Thousand Dollars ($70,000) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to: the "Law Offices of Andrew L. Packard Attorney-Client Trust Account." and delivered by overnight carrier to:

<u>Attn.</u>: Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952

Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

33.    <u>Missed Deadlines</u>. In the event that Defendant fails to submit to LA Waterkeeper any payment, document, report, or communication required by this

Consent Decree, Defendant shall pay a stipulated payment of Five Hundred Dollars
($500) per day. Such stipulated payments shall be made by check payable to Think
Watts Foundation, and such funds shall be used for the sole purpose of funding
environmentally beneficial projects, as described in Paragraph 31.  Payment shall be
sent via overnight mail to Think Watts Foundation, 1225 E 100th Street, Los Angeles,
CA 90002.  Defendant agrees to make the stipulated payment within fourteen (14)
days after the resolution of the event that precipitated the stipulated payment liability.

34.    <u>Interest on Late Payments</u>. Defendant shall pay interest on any
payments, fees, or costs owed pursuant to this Consent Decree that are not received
by the due date. The interest shall accrue starting the next business day after the
payment is due and shall be computed at a rate equal to the lower of: (i) 7% per year
(0.583% per month); or (ii) the maximum rate permitted by applicable law. Interest
shall continue to accrue daily on any outstanding balance until Defendant is current
on all payments then due under this Consent Decree, and shall be paid at the same
time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on
late payments shall be paid by check payable to: Think Watts Foundation and such
funds shall be used for the sole purpose of funding environmentally beneficial
projects, as described in Paragraph 31. Payment shall be sent via overnight mail to
Think Watts Foundation at the address above.

## IV.    DISPUTE RESOLUTION

35.    This Court shall retain jurisdiction over this matter for the Term for the
purposes of enforcing its terms and conditions, and adjudicating all disputes among
the Parties that may arise under the provisions of this Consent Decree. The Court
shall have the power to enforce this Consent Decree with all available legal and
equitable remedies, including contempt.

36.    <u>Meet and Confer</u>. Either party to this Consent Decree may invoke the
dispute resolution procedures of this Section IV by notifying the other party in
writing of the matter(s) in dispute and of the disputing party's proposal for resolution.

26

The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days of the meet and confer.

37. <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in Paragraph 36 the Parties agree that the dispute may be, but is not required to be, submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

38. In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

**V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

39. <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

40. <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

41.    Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.    MISCELLANEOUS PROVISIONS

42.    <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

43.    <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

44.    <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

45.    <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

46.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

47.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

48.    <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

49.    <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

50.    <u>Diligence</u>. Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

51.    <u>Effect of Consent Decree</u>. Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

52.    <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

53.    <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

54.    <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

55.    <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or the inability of Defendant to obtain the necessary permits, authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

56.    <u>Notice</u>.  All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

If to Plaintiff:
Los Angeles Waterkeeper
Barak Kamelgard
Benjamin Harris
Madeleine Siegel
360 E 2nd St., Suite 250
Los Angeles, CA 90012
Email: barak@lawaterkeeper.org
Email: ben@lawaterkeeper.org
Email: madeleine@lawaterkeeper.org
Phone: (310) 394-6162

If to Defendant:
Owens Corning
Madeline Fleisher
Senior Counsel, Environmental and
Regulatory Law
2790 Columbus Road
Granville, Ohio 43023
Email:
madeline.fleisher@owenscorning.com
Phone: (857) 636-0371

With copies to:
Andrew L. Packard
Law Offices of Andrew L. Packard
245 Kentucky Street, B3
Petaluma, CA 94952
Email: andrew@packardlawoffices.com
Phone: (707) 782-4060, Ext. 1.

With copies to:
Alan N. Bick
Bick Law LLP
520 Newport Center Dr., #750
Newport Beach, CA 92660
Email: abick@bicklawllp.com
Phone: (949) 432-3501

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

57.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

1        The Parties hereto enter into this Consent Decree and submit it to the Court for

2   its approval and entry as a final judgment.

3        IN WITNESS WHEREOF, the undersigned have executed this Consent Decree

4   as of the date first set forth below.

5   APPROVED AS TO CONTENT

6

7   Dated: _____August 2_____, 2024    By: _____

8                                  Bruce Reznik
                               Executive Director
                               Los Angeles Waterkeeper

9

10

11  Dated: _____August 2, 2024    By: _____

12                                 Madeline Fleisher
                               Senior Counsel, Environmental and
                               Regulatory Law
                               Owens Corning

13

14  APPROVED AS TO FORM

15

16                                 LAW OFFICES OF ANDREW L.
                               PACKARD

17

18  Dated: _____August 2____, 2024    By: _____

19                                 Andrew L. Packard
                               Attorney for Plaintiff
                               Los Angeles Waterkeeper

20

21

22                                 BICK LAW LLP

23

24

25  Dated: _____August 2, 2024    By: _____

                                 Alan N. Bick

26                                   Attorney for Defendant
                                 Owens Corning

27

28

1   **IT IS SO ORDERED.**
2   **FINAL JUDGMENT**

3
4       Upon approval and entry of this Consent Decree by the Court, this Consent

Decree shall constitute a final judgment between the Plaintiff and Defendant.
5

6

7   DATED:  September 20, 2024        JOSEPHINE L. STATON
8                                     _____
9                                     HON. JOSEPHINE L. STATON
                                      UNITED STATES DISTRICT JUDGE
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28